# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Larry Ray Heartburg,<br><br>    Defendant. | No. CR-13-01461-001-PHX-SPL<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE STEVEN P. LOGAN, UNITED STATES DISTRICT JUDGE:

Pending before the Court is a Superseding Petition, filed on April 3, 2017, alleging one violation of supervised release. Pursuant to a Standing Order of Referral, dated July 2, 2014, the Honorable Steven P. Logan, United States District Judge, referred the Petition to Revoke Supervised Release in the above-numbered case to the undersigned Magistrate Judge to conduct a "hearing and preparation of findings and recommendations . . . and submit the necessary Report and Recommendation . . ." as authorized under 18 U.S.C. § 3401(i) and 28 U.S.C. § 636(b)(3).

**I.  Procedural Background.**

On April 20, 2015, Defendant was sentenced to 12 months of imprisonment and 12 months of supervised release for each crime of conviction. (Doc. 170.) On July 10, 2017, a Petition was filed alleging violations of Defendant's supervised release. (Doc. 202.)

On October 25, 2017, this Court conducted an evidentiary hearing. The parties submitted written consent to the Court, and Defendant acknowledged his consent in court on the record. (Doc. 214.) The government proceeded on the three allegations in the Petition:

> Allegation A:
>
> **Special Condition #4** which states, "*You shall cooperate with the Internal Revenue Service and pay all tax liabilities. You shall file timely, accurate and lawful income tax returns and provide proof to the probation officer.*"
>
> Heartburg agreed to make payments toward his tax liabilities and cooperate with the Internal Revenue Service (IRS) and failed to do so. This is evidenced by a noncompliance memorandum from the IRS. Grade C violation §7Bl.l(a)(3)(B).
>
> Allegation B:
>
> **Standard Condition #5** which states, *"You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change."*
>
> On May 7, 2017, it was discovered Heartburg changed his home address on or about January 6, 2017 and failed to notify the probation officer within 72 hours. This is evidenced by testimony of the probation officer and IRS documents. Grade C violation. §7B 1.1 (a)(3)(B).
>
> Allegation C:
>
> **Special Condition #3** which states, *You are prohibited from making major purchases, incurring new financial obligations, or entering into any financial contract without the prior approval of the probation officer.*
>
> On or about January 6, 2017, Heartburg entered a $1992.34 per month home lease agreement. His prior lease was for $1500 per month. Heartburg did not seek or obtain approval from the probation officer prior to entering this new, more expensive, financial obligation. This is evidenced by the lease agreement and testimony of the probation officer. Grade C violation §7Bl.l(a)(3)(B).

(Doc. 202 at 1-2.)

Defendant was present and assisted by counsel. The government called Probation Officer Michael McClain and United States Internal Revenue Service Special Agent Todd Spencer. Government's Exhibit #7 was admitted into evidence. (Doc. 216.)

Government's Exhibit #7 contains 13 pages from Mercedes-Benz Financial Services. The records concern Defendant's lease of a Mercedes. The cover letter from Mercedes-Benz Financial Services is dated April 18, 2017, but the documents date from March of 2016. In those documents, Defendant states that his annual income is $60,000. (*See* Page 3 of Government Exhibit #6.)

Defendant called Kathy Green (Certified Public Accountant) and John Jakubczyk Esq. as defense witnesses. Defense Exhibits #1 and #7 were admitted into evidence. (Doc. 218.) Defendant's Exhibit #1 is a four-page printout of Defendant's December 2016 Monthly Report, which was electronically submitted to U.S. Probation, with the information contained in quotation marks representing Defendant's answers to pre-populated questions. On the first page of the form, under the heading "Primary Residence Information," Defendant typed that his address was changed from "Apt 3020" to "Apt 2005." Defendant's Exhibit #6 is a printout of a form generated by the U.S. Internal Revenue Service regarding Defendant civil tax matter. Exhibit #6 contains chronological notes of Revenue Officer Evans. The document references a party contacting the IRS and stating Defendant "wishes to resolve his collection matters."

**II.     Findings of Fact.**

The Court submits the following findings of fact.

**A.     Probation Officer Michael McClain.**

On August 26, 2016, Probation Officer McClain met with Defendant and reviewed his conditions of supervised release, which included Special Conditions #3 and #4, and Standard Condition #5.

In early 2017, Probation Officer McClain was contacted by IRS Agent Mark Hoff based on Defendant's failure to comply with IRS requests. IRS requested documents from 2005 to 2015, but Defendant was not supplying those documents. Agents were also having difficulty contacting Defendant. Based on conversation with IRS staff, McClain requested the IRS file a memorandum documenting Defendant's compliance problems. A

memorandum of noncompliance was authored on March 24, 2017.[1]

Probation Officer McClain testified he was also advised that Defendant missed a restitution payment in March of 2017. McClain went to Defendant's first apartment on several occasions in March of 2017 because he did not know Defendant had moved. Defendant had been approved to reside in a Scottsdale apartment with a rent of approximately $1500 per month. In March of 2017, Officer McClain discovered that Defendant had switched apartments (in the same complex) months earlier, on or about January 6, 2017. McClain learned that Defendant's new residence had a monthly rent of $1,992. Defendant never requested permission to switch apartments and increase his rent. Defendant never verbally notified McClain of the change in residence. Ultimately, McClain reviewed the monthly reports, and found that Defendant noted a change of address in the December 2016 report.[2] Officer McClain stated that placing a notice of change of address in the monthly report is insufficient because Defendant was required to receive permission to change residences or enter new contracts.

Officer McClain testified that Defendant has a $170,000 IRS tax obligation. Defendant also has a $250,000 restitution order.

### B. IRS Special Agent Todd Spencer.

Special Agent Spencer is an IRS Special Agent with over 16 years of experience in the criminal investigations unit. He was substantially involved in the investigation of Defendant's convicted offenses. Special Agent Todd Spencer testified that IRS Agent Mark Hoff authored a noncompliance memorandum regarding Defendant, and Hoff submitted it to Special Agent Spencer. Spencer, in turn, submitted the letter to the Probation Office.

Special Agent Spencer testified that Hoff wrote the noncompliance letter based on Defendant's difficulties with the IRS. Hoff also stated to Spencer that Defendant was

---

[1] The Memorandum was not admitted into evidence.

[2] McClain testified that Defendant filed a monthly report in December of 2016 that noted a change in residence. McClain testified the December monthly report was intended to document events that occurred in November 2016.

- 4 -

cooperative regarding the Defendant's tax assessment. According to Hoff, Defendant said he "didn't care" because Defendant said he "had no money" and was living off of social security income. Spencer did not recall a conversation with Agent Hoff regarding Defendant's sources of income.

Special Agent Spencer also spoke with Revenue Officer Ryan Evans. Officer Evans was assigned to handle debt collections. On February 1, 2017, Evans and Defendant spoke telephonically. According to Evans, Defendant told Evans that the IRS "will never get a dime out of me" because Defendant was living on social security payments. According to Evans, Defendant refused to answer questions regarding bank accounts and vehicles he owns. Officer Evans set an unknown date for Defendant to submit financial documents to the IRS. Officer Evans ended the conversation by asking Defendant if he wanted Officer Evans' contact information. Defendant stated that he might "call him back if I manage to remember your phone number." Special Agent Spencer described the conversation between Evans and Defendant as "contentious." On redirect examination, Spencer testified that Evans' notes of the conversation stated that Defendant "refused to provide" bank account information.

Special Agent Spencer testified that IRS employees independently acquired bank documents related to Defendant's lease of a Mercedes SLK 300. On the lease application, Government's Exhibit #7, Defendant disclosed self-employed annual income of $60,000 per year, along with $2,800 monthly income from a trust and social security income. Evans requested Defendant fill out Form 433a, which documents income and expenses. After several extensions, Defendant submitted the form to the IRS on May 22, 2017. Defendant did not sign the form. Agent Evans noted unknown bank deposits and property in Fiji. Special Agent Spencer testified that Defendant received $2800 per month in deposits from a trust account of a third party. When asked if Defendant was responsive regarding sources of income, Spencer said "I don't know." When asked if Defendant had fully explained his source of income to the revenue agent, Spencer said "I can't answer that." Spencer testified that in May of 2017, Defendant's statement of income did not

include the source of Defendant's $2,800 trust income. On cross-examination, Spencer clarified that the IRS knew of Defendant's $2,800 income, but Defendant had not disclosed the name of the trust. Agent Spencer testified he "did not have a problem" with the trust because he knew of this monthly income.

Special Agent Spencer reviewed Exhibit #5, which was not admitted, and testified that Defendant told the IRS he did not own property in Fiji. Spencer testified he did not have information to refute Defendant's claim.

Spencer testified that Evans' sought a 100% levy of Defendant's social security in early 2017 due to Defendant's nonpayment of his IRS obligations. Spencer testified that Evans obtained the levy. The government proffered that the levy began in March or April of 2017. Spencer testified that on July 24, 2017, Defendant started making payments to IRS even though Defendant agreed to an assessment several months earlier. Spencer stated Defendant was "not eligible for an installment agreement" so there "was no minimum payment mandated" per month. Spencer testified that the difficulty was "getting payment at all" from Defendant.

On cross-examination, Spencer was asked to identify the specific accounts Defendant did not disclose. Spencer stated, "I don't know." Spencer testified he was reading the notes out of Defendant's history, and repeated that "I don't know if" other accounts were not disclosed. Spencer testified that "I personally do not know what was and what was not disclosed."

Spencer testified that Defendant made no payments to the IRS between September 2016 and July 24, 2017. Defendant's first payment to the IRS was July 24, 2017.

### C. Kathy Green (Certified Public Accountant).

Kathy Green has been a certified public accountant since 1986. Defendant retained her to assist with tax returns and financial disclosures. She began working with Defendant in 2014. Green made contact with the IRS to assist with preparing IRS returns. She made contact with the IRS to assist with complying with Defendant's tax obligations. At Defendant's direction, Green stated she made contact with Agent Hoff approximately

three times in 2016.

### D. John Jakubczyk.

Attorney John Jakubczyk testified that Defendant was a recipient of $2800 monthly income from the "Misfeldt Trust." Defendant received this monthly income due to his friendship and assistance of with Janice Misfeldt, who is an assisted living center. Mr. Jakubczyk agreed these payments should be reported as income.

## III. Conclusions of Law.

"A district court may 'revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release.'" *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1995) (quoting 18 U.S.C. § 3583(e)(3)).

### A. Special Condition #4.

The government argues Defendant failed to cooperate with the IRS because he failed to provide financial records to the IRS, failed to disclose bank accounts to the IRS, and failed to make payments on his IRS assessment.

Defendant argues that the only evidence to support these allegations is the "opinions" of Agent Hoff and Officer Evans. Defendant argues that the government provided no specific evidence that Defendant failed to comply with any specific obligation.

The Court concludes that the government has not specifically proven by a preponderance of the evidence that Defendant failed to "cooperate with the Internal Revenue Service and pay all tax liabilities." Here, there is significant evidence that IRS agents and officers concluded that Defendant was not cooperative. But their conclusions are not evidence. Agent Hoff authored a letter of noncompliance on March 24, 2017 and submitted it to Special Agent Spencer. But that document was not admitted into evidence. Importantly, Special Agent Spencer did not identify from Agent Hoff a specific obligation that Defendant failed to meet. The Court finds that Hoff's mere conclusion that

1  Defendant was noncompliant is insufficient. The government cannot establish probable
2  cause to arrest an individual merely by submitting an affidavit that a police officer
3  concluded Defendant committed a crime; similarly, Agent Hoff's conclusions, without
4  more, are insufficient when they fail to provide the specific nature of noncompliance. *See*
5  *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965) (noting that "purely conclusory"
6  statements of officers, without detailing any of the underlying circumstances, will be
7  insufficient to establish probable cause).

8  Special Agent Spencer testified that Revenue Officer Evans also found Defendant
9  was not cooperative with IRS commands. But when asked, Spencer was unable to
10 identify a bank account or financial document Defendant failed to disclose. Defendant
11 submitted a Form 433a, and there was no evidence of Defendant's failure to disclose a
12 specific bank account. Regarding a February 1, 2017 phone interview, Officer Evans
13 wrote in his notes that Defendant "refused to provide" documents. Agent Spencer had no
14 specifics regarding what documents were requested and how Defendant refused to
15 provide the documents. Officer Evans subsequently sought and acquired the Mercedes
16 lease agreement[3], but there was no evidence that Defendant had the document or was
17 given a deadline to provide the document.

18 The government argues Defendant failed to cooperate by failing to pay his IRS
19 obligation. The government argues that Defendant stated he had $60,000 per year annual
20 income in his Mercedes-Benz lease agreement and Defendant had $2800 monthly trust
21 income. Because Defendant made no IRS payments until July 24, 2017, the government
22 argues he was uncooperative with the IRS while on supervised release. Also, the IRS was
23 forced to levy Defendant's social security in early 2017, which shows Defendant was not
24 paying the IRS as required. But the government provided no proof Defendant actually
25 had $60,000 in annual income.[4] Here, Defendant did not make an IRS payment until

---

[3] Defendant entered into this Mercedes lease agreement prior to beginning his supervised release.

[4] Defendant argues that he claimed this amount on the Mercedes lease shortly after being released from prison, so this was projected income. Defendant's point is well made.

- 8 -

July 24, 2017, which was two weeks after the Petition alleging a violation of supervised release was filed. But the IRS did not require a monthly minimum payment from Defendant. And the government did not establish his monthly income versus expenses, leaving the Court to speculate Defendant was able to make payments to the IRS. The IRS levied Defendant's social security, but again there were no specifics on why that decision was made and whether it reflected that Defendant was uncooperative with the IRS. Also, if the IRS levied Defendant's social security, perhaps it determined that was the most Defendant could pay per month beginning at the time of the levy. But it does not necessarily prove that the IRS decided Defendant was capable of paying more prior to the levy. Ultimately, the Court is left to guess as to whether Defendant had more ability to pay and thus was uncooperative. Defendant made a payment on July 24, 2017, but that does not prove his ability to pay in February and March of 2017.[5]

**B. Standard Condition #5**

The Court finds the government has proven Defendant violated Standard Condition #5 of his supervised release, which required Defendant to "live at a place approved by the probation officer." On January 6, 2017, Defendant switched apartments within his housing complex. He moved from Apartment #3020 to Apartment #2005. (*See* Defendant's Exhibit 1.) Defendant's rent increased over $400 per month. There is no evidence before the Court that Defendant sought and received the approval of his probation officer to switch apartments. Probation Officer McClain testified that he first became aware of the change of address in March of 2017. Defendant argues that he was encouraged to switch to a larger apartment to accommodate the needs of his child, Adler Heartburg. Nonetheless, Defendant did not receive permission to change his residence even though he placed the information in the December monthly report.

---

[5] The Court is aware that Defendant may have had ample ability to pay his IRS obligation, but that fact has not been proven by a preponderance of the evidence. The Court notes that Defendant appears to have little interest in paying his IRS obligation because he chooses to drive a Mercedes rather than paying what he owes to victims and the government. The question of whether Defendant's $200 monthly minimum restitution payment should be increased is not before this Court.

### C. Special Condition #3.

The Court finds the government has proven Defendant violated Special Condition #3 of his supervised release, which prohibited him from "entering into any financial contracts without the prior approval of the probation officer." On January 6, 2017, as noted above, Defendant switched apartments in his housing complex. Defendant's rent increased from $1,500 to $1992.34 per month. Officer McClain testified that Defendant did not request or receive prior approval to enter into this financial contract. There was no evidence submitted that Defendant received Officer McClain's approval to enter into this financial contract.

## IV. Recommendation

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and LRCrim 57.6(d)(4), Rules of Practice for the District of Arizona, the undersigned Magistrate Judge **RECOMMENDS** that the Honorable Steven P. Logan, United States District Judge, after an independent review of the record, find Defendant violated the terms of supervised release contained in Allegations B and C.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(b)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

**IT IS ORDERED** setting a final disposition hearing for **November 27, 2017**, at **2:00 p.m.** before the Honorable Steven P. Logan, United States District Judge, in Courtroom 501, Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Phoenix, Arizona.

**IT IS FURTHER ORDERED** that the U.S. Probation Department shall prepare a Disposition Report and the Defendant shall cooperate with the Probation Department in its preparation of the Disposition Report.

**IT IS FURTHER ORDERED** the parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2). Failure to timely

file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Crim. P. 59.

Dated this 2nd day of November, 2017.

Honorable John Z. Boyle
United States Magistrate Judge